NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 6 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CAROL MEYERS,

Plaintiff-Appellant,

v.

KAISER FOUNDATION HEALTH PLAN, INC.,

Defendant-Appellee.

No.   19-15051

D.C. No. 5:17-cv-04946-LHK

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Submitted March 26, 2020[**]
San Francisco, California

Before:  WALLACE, GRABER, and COLLINS, Circuit Judges.

Plaintiff-Appellant Carol Meyers timely appeals from the district court's

judgment after a bench trial in her Employee Retirement Income Security Act

(ERISA) action against Defendant-Appellee Kaiser Foundation Health Plan, Inc.

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument.  See Fed. R. App. P. 34(a)(2).

(Kaiser). Meyers brought this action on behalf of her teenage daughter, A.M., who was a covered dependent in her employer-sponsored health plan (Plan) with Kaiser, which is governed by ERISA. Meyers sought reimbursement of her payments to Elevations RTC/Seven Stars (Elevations) for A.M.'s out-of-network care from April 23 through August 12, 2016 at Elevations' facility in Utah. We affirm.

The parties dispute whether we should review de novo or for abuse of discretion. *See Abatie v. Alta Health & Life Ins.*, 458 F.3d 955 (9th Cir. 2006) (en banc) (distinguishing between flagrant and minor procedural irregularities). We need not resolve that dispute because we agree with the district court that, even under de novo review, Kaiser properly denied Meyers' claim.

Meyers points to two exceptions in the Plan for out-of-network care, each of which she asserts entitles her to reimbursement. First, she argues that A.M. received "Emergency Services" for treatment of an "Emergency Medical Condition" while at Elevations. Second, she argues that the Plan provides coverage because there were no available in-network facilities that provided residential mental health treatment. We disagree.

First, A.M. did not receive Emergency Services from Elevations. A.M. was hospitalized in Northern California on April 15, 2016, and she remained hospitalized there until April 23, 2016, when she was released and transported to Elevations. Because A.M. had a "mental health condition," which caused her to pose "an

immediate danger to . . . others," A.M. suffered from an Emergency Medical Condition under the Plan. The Plan covers "Emergency Services . . . receive[d] from . . . Non-Plan Providers anywhere in the world." In addition, Emergency Services do not require prior authorization, *i.e.*, Kaiser's approval of the Emergency Services in advance.

However, the Plan circumscribes the scope of Emergency Services. An Emergency Service is, "with respect to an Emergency Medical Condition[,]" (1) "[a] medical screening exam that is within the capability of the emergency department of a hospital" and (2) "[w]ithin the capabilities of the staff and facilities available at the hospital, [any] Medically Necessary examination and treatment required to Stabilize the patient." "Stabilize" means "[t]o provide the medical treatment of Emergency Medical Condition that is necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the person from the facility." The Plan's definition of Emergency Service further provides that "once [the patient's] condition is Stabilized, Services [the patient] receive[s] are Post Stabilization Care and not Emergency Services."

In concluding that A.M. did not receive "Emergency Services," the district court made detailed factual findings, which were not clearly erroneous. In March 2016, before A.M. was hospitalized, Meyers wrote that she had started to review

3

programs that matched A.M.'s needs. Meyers planned to have A.M. admitted to Elevations, completing paperwork for the program before her admission. Before A.M.'s hospitalization, Myers stated that Elevations was the "perfect match" for A.M. Two days before A.M. was discharged from the hospital, Meyers advised the hospital that she would decline their recommended behavioral health treatment because she was working to enroll A.M. in a "steps" program. A day before A.M. was discharged, Kaiser learned from Meyers that she was declining the recommended treatment and would be moving to Utah for out-of-state placement. On April 23, 2016, on Meyers' direction, A.M. was transported to Elevations.

Kaiser properly concluded that A.M. did not receive Emergency Services at Elevations. The services provided at Elevations were not "required to [s]tabilize the patient," *i.e.*, "necessary to assure . . . that no material deterioration of [A.M.'s] condition [was] likely to result from or occur during the transfer" from the hospital. If A.M. required treatment to avoid "material deterioration" of her condition, her transfer to Elevations' facility would not have been planned in advance to a program 800 miles away from the hospital in Northern California.

In any event, under the Plan, A.M. was Stabilized when she was ready to be released from the hospital in Northern California for transfer to another facility. Thus, any care at that point would be covered, if at all, as Post-Stabilization Care. Meyers, however, does not contend that A.M.'s treatment at Elevations qualifies as

4

Post-Stabilization Care. Accordingly, A.M. did not receive Emergency Services at Elevations.

Second, Kaiser properly concluded that A.M.'s stay at Elevations was not covered under the exception for unavailable in-network services. Even if there were no in-network facilities that could have treated A.M., the Plan required Meyers to obtain Kaiser's approval before A.M. began the treatment at Elevations. Under the Plan, "[s]ervices not available from Plan Providers" are included as an example of a service "requir[ing] prior authorization by the Medical Group for the Services to be covered" by the Plan.

Nothing in the record suggests that Kaiser approved A.M.'s treatment at Elevations before April 23, 2016. Because Meyers did not receive Kaiser's approval before A.M. began her treatment at Elevations, the out-of-network exception does not apply.

Finally, the district court properly rejected Meyers' argument that Kaiser's denial discriminated against medically necessary healthcare. This new theory of liability was not asserted in Meyers' complaint but was raised for the first time in her opening trial brief. Meyers thereby waived this claim, and we decline to consider it.

**AFFIRMED**.

5